Tax Review Board of the City of Philadelphia, Appellant v. Lipschutz Brothers, Inc., Appellee.

Argued November 18, 1981, before President Judge Crumlish and Judges MacPhail and Palladino, sitting as a panel of three.

Stewart M. Weintraub, Deputy City Solicitor, with him Serena H. Dobson, Assistant City Solicitor, and Alan J. Davis, City Solicitor, for appellant.

Ronald H. Isenberg, Isenberg, Goldin & Blumberg, for appellee.

OPINION BY JUDGE MACPHAIL, December 30, 1981:

Lipschutz Brothers, Inc. (Taxpayer) maintains a Customs Bonded Warehouse and an Internal Revenue Export Warehouse (collectively Warehouses) in Philadelphia from which it sells liquor, cigarettes and tobacco for use and consumption beyond the territorial jurisdiction of the United States on vessels that have cleared the port of Philadelphia in foreign commerce. The City of Philadelphia (City) in 1952 enacted the Philadelphia Mercantile License Tax (Tax) which imposed a tax upon the gross receipts of persons doing business in Philadelphia for the privilege of doing business there. Taxpayer filed timely reports pursuant to the provisions of the Tax but in 1972, as the result of an audit, the City's Department of Revenue made a delinquent tax assessment against Taxpayer in the sum of $19,612.11 plus interest and penalties for the years 1966 through 1972. The assessment disallowed the exemption claimed by Taxpayer for receipts from the sales of liquor and cigarettes from its Warehouses.

Taxpayer appealed the assessment to City's Tax Review Board (Board). The Board, feeling itself bound by a ruling from City's Law Department, upheld the tax assessment except as to liquor imported and subsequently resold in the original unbroken package, but found the Taxpayer had acted in good faith and that the penalties, therefore, should be abated.

Taxpayer then appealed to the Court of Common Pleas in Philadelphia where Judge DOTY, in a very able opinion, *Lipschutz Bros., Inc. v. Tax Review Board,* 4 Phila. 374 (C.P. Pa. 1980), reversed the

Board and remanded to the Board for findings of fact and conclusions of law consistent with his opinion. Board has appealed to this Court from that order.[1]

There is no dispute of fact in this case. Taxpayer deposits and stores in its Warehouses alcoholic beverages and tobacco products. The liquor arrives in a bonded carrier consigned to the United States Bureau of Customs for delivery to Taxpayer's Warehouse. The liquor remains in its original case from the time it arrives at the Warehouse, to which Taxpayer has no access, until it is placed in a vessel engaged in foreign commerce and that vessel is beyond the territorial waters of the United States. The same procedure is followed with respect to tobacco products except that the Taxpayer does have access to the Internal Revenue Export Warehouse.

In his opinion, Judge DOTY stated that the issue of the case presented was whether or not the goods involved were in foreign commerce. After an examination of Article I, Section 8, Clause 3, and Article I, Section 10, Clause 2 of the United States Constitu-

---

[1] The order of the trial court from which this appeal has been taken reads as follows:

> The decision of the Tax Review Board is reversed and the matter is remanded to the Board for findings of fact and conclusions of law consistent with this Opinion.

Although the order on its face would seem to be interlocutory and hence unappealable, *Commonwealth v. 1316, Inc.*, 48 Pa. Commonwealth Ct. 514, 410 A.2d 906 (1980), it is our opinion that the effect of the remand is to grant the exemption claimed by Taxpayer and to vacate the assessment. Therefore, to the extent that the decision of the Board on the substantive issues raised by Taxpayer has been reversed, the order of the trial court is a final order and appealable to this Court. *See H. B. Sproul Construction Co. v. Workmen's Compensation Appeal Board,* Pa. Commonwealth Ct. , 431 A.2d 1143 (1981).

tion,[2] Section 2 of the Twenty-first Amendment to the United States Constitution,[3] Sections 309 and 317 of the Tariff Act of 1930, 19 U.S.C. §§1309 and 1317,[4] and Section 5704 of the Internal Revenue Code, I.R.C. §5704,[5] he concluded:

---

[2] U.S. Const. art. I, §8, cl. 3 states:

Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States. . . .

U.S. Const. art. I, §10, cl. 2 states:

No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its Inspection Laws. . . .

[3] U.S. Const. amend. XXI, §2 states:

The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

[4] Section 309(a)(1), 19 U.S.C. §1309(a)(1) reads in pertinent part as follows:

Articles of foreign or domestic origin may be withdrawn, under such regulations as the Secretary of the Treasury may prescribe from any customs bonded warehouse . . . free of duty and internal-revenue tax, or from any internal-revenue bonded warehouse . . . free of internal-revenue tax. . . .

(1) For supplies . . . of . . . (B) vessels of the United States . . . actually engaged in foreign trade. . . .

Section 317, 19 U.S.C. §1317 states in pertinent part:

(a) The shipment or delivery of manufactured tobacco, snuff, cigars, or cigarettes, for consumption beyond the jurisdiction of the internal-revenue laws of the United States, as defined by section 2197(a) of Title 26, shall be deemed internal-revenue laws applicable to the exportation of such articles without payment of duty or internal-revenue tax.

[5] I.R.C. §5704(b) provides in pertinent part:

A[n] . . . export warehouse proprietor may transfer tobacco products . . . without payment of tax . . . for consumption beyond the jurisdiction of the internal revenue

In summary, the Court points out that this is a case involving a federal statute passing constitutional muster as being legislation pursuant to Congress's exclusive control over foreign commerce. This statute unquestionably covers the goods sold by Lipschutz in the normal course of its business and clearly exempts these goods based on the aforementioned law and principles. This is not a case dealing generally with the ability of the States or their localities to tax goods passing through or coming to rest within their borders. In this particular matter, the case is controlled by a specific, in point, federal statute and the holding of this Court is confined solely to this precise facit of conflicting federal-state taxation.

*Lipschutz,* 4 Phila. at 396.

In its appeal to us, City argues that 1) the trial court erred when it concluded that the Tax was in denigration of Federal law and 2) the trial court erred when it did not decide whether Taxpayer's receipts from "in bond" liquor and tobacco products were "receipts from sales made in foreign commerce" within the express provisions of the City's Mercantile License Tax Regulations (Regulations).

The Regulations were promulgated pursuant to authorization contained in the Tax ordinance. Section 303(a)(17) of the Regulations provides as follows:

The following receipts shall be excluded from gross receipts, and shall be omitted from the tax base:

. . . .

---

laws of the United States . . . in accordance with such regulations and under such bonds as the Secretary shall prescribe.

(17) Receipts from transactions in foreign commerce (as distinguished from interstate commerce) are to be reported as gross receipts, but may be taken as an allowable deduction in computing the tax base.

Section 304 of the Regulations reads as follows:

In general, foreign commerce includes trade between the United States and foreign countries. Trade with territories or possessions of the United States is also considered to be foreign commerce.

Section 305(a)(1) of the Regulations reads as follows:

'Original package' doctrine. Receipts from the sale of imports by the importer thereof when sold in the original, unbroken package or container in which the goods were imported (that is, the overall package or container) are receipts from sales in foreign commerce. Foreign commerce is involved in such cases even though the goods are located in Philadelphia at the time the sale takes place and even though the seller and the buyer are, and delivery and transfer of title take place, in Philadelphia.

Section 305(b) of the Regulations provides as follows:

*Exports.* Receipts from the sale of goods exported from the United States to a foreign country are receipts from sales in foreign commerce. Foreign commerce is involved in exports sales when the seller agrees to, and does, deliver the goods to the purchaser at a foreign destination, or places the goods, properly packed and marked for export, in the hands of a common carrier or other designated agency for subsequent delivery to the buyer at a foreign destination. It is immaterial whether title to the goods passes, in such cases, upon delivery

to the carrier or other designated agency, or upon arrival of the goods at their destination,

Taxpayer's contention is that the business it is transacting with respect to the merchandise in question is foreign commerce and that the receipts from those transactions are exempt from the tax by virtue of the provisions of Section 303(a)(17) of the Regulations. City argues that Taxpayer's transactions do not fall within any of the exclusions provided for by the Regulations.

It has been held that the Federal government has preempted the power of states, and hence all other taxing bodies, to define what is foreign commerce. *McGoldrick v. Gulf Oil Corp.*, 309 U.S. 414 (1940); *Illinois v. United States*, 289 U.S. 48 (1933); *Northwest Airlines, Inc. v. Commissioner of Revenue*, 310 Minn. 461, 247 N.W.2d 33 (1976). Accordingly, whether or not Taxpayer's transactions in the instant case *are* foreign commerce depends not upon City's ordinance, its Regulations, or its interpretation thereof, but rather whether under *Federal* law the transactions are foreign commerce. In a case factually similar to the one now before us, a Federal District Court has held that the attempt of the State of New Jersey to require persons engaged in federally supervised liquor in bond trade to obtain a wholesale liquor license was an undue burden upon foreign commerce. *Epstein v. Lordi,* 261 F. Supp. 921 (D.N.J. 1966), aff'd, 389 U.S. 29 (1967). There, the Court said,

Here, the national interest is more than the general desirability of freely flowing goods. In the case of liquor sold in bond for shipment and use *as ships' stores* or at foreign destinations, Congress has spelled out a specific interest by enacting the aforementioned complement of tariff, internal revenue and customs statutes

and regulations. It is the expression of congressional policy embodied therein which concretely indicates the national policy involved. (Emphasis added.)

*Id.* at 938.

Apart from the decision in *Epstein,* we are well satisfied that where goods are never in the physical possession of the Taxpayer and are specifically earmarked in their original containers for delivery beyond the territorial waters of the United States, such goods are in foreign commerce. City contends that all of Taxpayer's business activities occur completely within the City of Philadelphia, and therefore, the Tax is analogous to the business and occupation tax found to be constitutional in *Department of Revenue of the State of Washington v. Association of Washington Stevedoring Cos.,* 435 U.S. 734 (1978). This argument fails to perceive the difference between a tax on the business or occupation of a stevedore who handles goods in interstate commerce and a tax on receipts from business transactions involving goods which are, by virtue of Federal regulation and supervision, in *foreign* commerce.

Nor is there merit in City's contention that this case should be decided under the City's Regulations apart from any constitutional considerations. The whole essence of this case is the nature of the activity in which Taxpayer is engaged. The City's Regulations provide that goods in foreign commerce are excluded from the imposition of the tax. Until a determination is made as to whether the goods which are the subject of the business activity are or are not in foreign commerce, which determination as we have seen is governed by Federal law including the applicable provisions of the Constitution of the United States, it is impossible to determine whether or not

Taxpayer is entitled to an exemption under the Regulations.

We are well satisfied that Judge DOTY's analysis of the Federal law applicable to this case is correct and need not be repeated here. His conclusion is likewise correct:

> The Court therefore holds that Lipschutz's sale of in bond liquor, tobacco and tobacco products under the authority of the Tariff Act of 1930, the Internal Revenue Code, and all relevant regulations pursuant to these laws, was the sale of goods in foreign commerce, under the exclusive control of federal law which foreclosed the imposition of any tax on these goods, and thus the City's taxation of these items is contrary to law and inapplicable to appellant's trade in these goods.

*Lipschutz,* 4 Phila. at 394-95.

Order affirmed.

ORDER

AND Now, this 30th day of December, 1981, the order of the Court of Common Pleas of Philadelphia County dated July 8, 1980 is affirmed.